Walter R. Hart, J.
The action herein is brought to recover on various checks drawn by the defendants as individual makers. Some of them were made payable to cash and indorsed by the makers; others were payable to the order of the plaintiff. In none of the causes of action is it alleged that plaintiff is a holder in due course. The complaint further alleges that when presented to the bank on which it was drawn each of the checks was dishonored.
Plaintiff presently moves to strike the first and third affirmative defenses of defendants Westerman and Rosen. In the first affirmative defense, these defendants allege that at the time the checks were delivered until January 8, 1954 they were officers of a corporation known as Hardy Plastic & Chemical Corp.; that for the period commencing prior to October 16, 1953 and subsequent to November 4, 1953 (the period during which the checks were issued) the plaintiff was engaged in the business of cashing checks for a consideration; that during that period of time plaintiff, for a consideration, cashed the salary checks of the employees of the Hardy Plastic & Chemical Corp.; that prior to October 16, 1953 several of the salary checks cashed by the plaintiff were dishonored. It is further alleged that the checks here in suit were delivered to plaintiff as an assurance that the dishonored salary checks would be paid and were delivered upon condition that they were not to be effective unless the dishonored salary checks were not finally collected by plaintiff from the corporation and then only to the extent to which plaintiff did not receive payment. Defendants then allege that the plaintiff was not licensed to engage in the business of cashing checks and conclude that by reason thereof the checks issued by them ‘ ‘ being guarantee of collection of checks illegally cashed, were invalid and unenf orcible. ”
This defense is purportedly predicated on the provisions of article IX-A of the Banking Law (§ 366 et seq.) which require the licensing of persons or corporations engaged in the business of cashing checks for a charge or consideration. For failure to procure such a license, the violator “ shall be guilty of a misdemeanor” (§ 373). Plaintiff cogently contends that since *626 the Banking Law by its terms does not provide that its violation would deprive the violator of his rights under contractual obligations, the right to recovery will not be defeated. Plaintiff’s position is buttressed by the holding of the court in Rosasco Creameries v. Cohen (276 N. Y. 274). There plaintiff sued to recover the agreed price and reasonable value of milk sold by him to defendant who interposed as an affirmative defense the fact that plaintiff had violated section 257 of the Agriculture and Markets Law by failing to procure the license required by that statute. In his reply to the counterclaims interposed by defendant, plaintiff failed to deny the affirmative defense. The statute in question provided that the failure to procure such a license constituted a misdemeanor. Plaintiff’s motion to strike the defense was granted at Special Term and defendant’s motion to dismiss the complaint was denied. The Appellate Division reversed Special Term and dismissed the complaint. The Court of Appeals, in turn, reversed the Appellate Division, stating (pp. 278, 280) :
“ Illegal contracts are generally unenforcible. Where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied. (See Williston on The Law of Contracts, vol. 3, § 1789; vol. 5 [2d ed.], § 1630. Cf. American Law Institute, Restatement of the Law of Contracts, §§ 548, 600.) * * *
“We have here a statute which provides that milk dealers shall not sell milk unless duly licensed. The statute imposes penalties for its violation by way of fine and imprisonment, but it does not expressly provide that contracts made by milk dealers shall be unenforcible. Nothing in this statute reveals an implied intent to deprive unlicensed dealers of the right to recover the reasonable value of the milk sold by them, and where the wrong committed by the violation of the statute is merely malum prohibitum, and does not endanger health or morals, such additional punishment should not be imposed unless the legislative intent is expressed or appears by clear implication.”
A clear legislative intent to deprive a party of contractual rights accrued in violation of statute is illustrated by section 131 of the Banking Law which prohibits the discounting of notes by domestic corporations other than those under the *627 Banking Law. That statute clearly provides (subd. 1) that “ All notes * * * made or given to secure the payment of money loaned or discounted ” contrary to the provisions of the Banking Law “ shall be void (See, Miller v. Discount Factors, 1 N Y 2d 275.) No such legislative intent is here manifest. Accordingly, plaintiff’s motion to strike the first affirmative defense on the ground of insufficiency is granted.
The third defense pleaded by defendants, incorporating by reference the allegations in the first affirmative defense relating’ to the circumstances and conditions under which the checks were made and delivered to plaintiff, i.e., giving as guarantee of payment of the dishonored payroll checks of the corporation which plaintiff had cashed, then alleges that defendants were therefore entitled to be subrogated to plaintiff’s rights in the salary checks. It is further alleged that the corporation was adjudicated a bankrupt about April 4, 1954 and that more than a reasonable time elapsed for the presentment for payment of the checks here in suit. It is then claimed that defendants were deprived of their rights of subrogation and were damaged by the failure of the plaintiff to present said checks for payment within a reasonable time. Defendants, to sustain their position, rely on section 322 of the Negotiable Instruments Law which provides as follows: “ A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.”
It is to be observed that defendants do not claim that the corporation checks which they guaranteed were not presented for payment causing damages to them in their rights as subrogees. In the state of the pleadings it is their contention that they suffered damage because their own checks were not presented within a reasonable time. It is clear, however, that the only way that the drawer of a check can be exposed to damage by delay in the presentation of a check, is where the drawee bank becomes insolvent subsequent to the delivery of the check and prior to its presentment (Moskowitz v. Deutsch, 46 Misc. 603). There are no allegations here that the drawees, on which the checks were drawn, became insolvent after the checks were delivered so that the delay in presentment caused any damage to the defendants. Third affirmative defense, therefore, is dismissed as insufficient.
Defendants presently move for judgment on the pleadings. The basis of the motion is that plaintiff in his bill of particulars states that: ‘ ‘ The consideration paid or given by the plaintiff for the check [s] * * * is as follows: Plaintiff upon the *628 request of the defendant [s], * * * officer [s] of the Hardy Plastic & Chemical Corp., * * * at the special instance of said defendants] cashed various and diver [sic] checks issued by the * * * Corp. to the corporation employees, and to secure the plaintiff and as and for collateral security, the said defendant [s] executed and issued [their] personal check [s] as alleged in * * * plaintiff’s complaint, and which check [s] said plaintiff was to cash and use the proceeds of same as, if and when the corporation, * * * defaulted in the payment of any of the corporation’s checks that said plaintiff cashed for the corporation as requested by said defendant [s], and that the corporation defaulted in the payment of the aforementioned checks.”
It is defendants’ contention that the foregoing demonstrates that the checks were “ issued to answer for the debt or default of Hardy Plastic & Chemical Corp. and are therefore void unless there is a sufficient memorandum in writing.” It is urged that since plaintiff failed to plead the written memorandum of the agreement either in the complaint or the bill of particulars, defendants are entitled to judgment by reason of the Statute of Frauds (Personal Property Law, § 31, subd. 2). Brushing aside the technical objection that the answer does not affirmatively plead the Statute of Frauds, the court concludes there is no merit to defendants’ contention. The action herein is brought on the dishonored checks and not on the agreement of guarantee. The guarantee is merely recited to be the consideration for the checks, which in the first instance is presumed (Negotiable Instruments Law, § 50). Accordingly, the motion is denied.
Defendants also move for leave to serve an amended answer so as to plead that the guarantee agreement heretofore referred to was unenforcible perforce of the Statute of Frauds. Disregarding the circumstances that the proposed amended answer was not submitted on the motion, it is patent that the proposed amendment is palpably insufficient for the reasons heretofore outlined. Since it is apparent that the amendment will not benefit the defendants, the motion is denied (Stanford v. Cayuga Linen & Cotton Mills, 255 App. Div. 928; Bell v. Yasgur, 201 Misc. 171; Dumbadze v. Agency of Can. Car & Foundry Co., 38 N. Y. S. 2d 991, affd. sub nom. Gurge v. Agency of Can. Car & Foundry Co., 267 App. Div. 782).
Settle orders on notice.